UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SHAHEEN MICHAEL CURRY, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. No. 07-100-P-H |
| UNITED STATES OF AMERICA, | ) | Civ. No. 09-234-P-H |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Shaheen Michael Curry has filed a 28 U.S.C. § 2255 motion seeking relief from his

guilty-plea conviction and 188-month sentence for conspiring to distribute and possess cocaine

base.   Curry presents four grounds, two of which are ineffective assistance claims relating to his

decision to plead guilty, one of which is an ineffective assistance claim concerning the advisory

nature of the guidelines, and one of which seeks to "reset" the date for filing a challenge to his

career offender status until he has resolved a challenge to one of his predicate offenses in

Massachusetts.   I now recommend that the Court deny Curry 28 U.S.C. § 2255 relief.

*Discussion*

The prosecution version of Curry's offense is as follows;

On August 29, 2007, a Scarborough police officer executed a traffic stop.
Pursuant to a consent search of the vehicle, the officer recovered 2 methadone
pills. In an effort to avoid arrest, the driver promptly offered to provide
information on two black males from Boston who were involved in the
distribution of crack cocaine in the greater Portland area. The police officer
agreed to take the driver up on his/her offer to assist.
On August 30, 2007, a U.S. Drug Enforcement Administration (DEA)
Task Force Agent (TFA) accompanied a Scarborough police officer to the
informant's (CI's) residence. The CI described two black males that were cousins
and that go by the names "CJ" and "D". The CI reported purchasing crack cocaine

from "CJ" and "D" in the past and said that he/she would normally dial telephone number (207) 321-1015 to reach them. The CI also called this number in the presence of a DEA TFA and made contact with a male the CI described as "D." The CI told "D" that he/she needed an "O" (reference to an ounce of crack cocaine). The CI said that "D" said he was able to provide the crack the following day around 3:00.

On August 31, 2007, a DEA TFA met with the CI at the Scarborough Police Department. The CI placed a series of monitored and recorded calls to (207) 321-1015. All of these calls were answered by a male the CI described as "CJ." During these calls, "CJ" and the CI agreed to meet later that afternoon to conduct the drug transaction. The finalized plans called for the delivery of 24 grams of crack cocaine for $1,800. Based upon the telephone calls, agents expected "CJ" to be arriving in an ABC Taxi.

While pre-positioned in the pre-arranged meeting area with the CI, and shortly after the CI received a telephone call from "CJ" informing the CI that he ("CJ") was almost there, agents spotted an ABC Taxi pull into the area. After the taxi came to a stop, the defendant and codefendant Durrell Curry (D. Curry) got out of the back seat. Immediately upon seeing them, the CI said "that's them."

The defendant and D. Curry were placed under arrest. A search of the defendant resulted in the recovery of the cell phone bearing telephone number (207) 321-1015. A search of D. Curry resulted in the recovery of just under one ounce of suspected cocaine base. The suspected cocaine base was tested by a DEA forensic chemist, resulting in a positive reading for the presence of cocaine base. The net weight of the cocaine base was 14.9 grams.

Later that same day, a Maine Drug Enforcement Agency (MDEA) Special Agent sought and obtained a warrant from Maine District Court to search Room 219 of the Travelodge Hotel, located at 1200 Brighton Avenue in Portland, Maine. The defendant had been staying in this room at the time he was arrested. A later search of the defendant's hotel room resulted in the recovery of the following items: (1) one thousand three hundred thirty seven dollars ($1,337.00); (2) a digital scale with suspected cocaine residue; (3) one box of sandwich bags and three plastic sandwich bags with corners removed; (4) receipts in the name of Shaheen Curry; and (5) one Massachusetts identification card in the name of Shaheen Curry. The evidence would show that digital scales and sandwich bags are items frequently used by drug traffickers.

(Prosecution Version at 1-3, Crim. No. 07-100-P-H, Doc. No. 70.)


**A. Curry's Three Sixth Amendment Challenges**

The First Circuit has explained with respect to the <u>Strickland v. Washington</u>, 466

U.S. 668 (1984) Sixth Amendment standard:

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." It is well settled that this right to effective assistance of counsel attaches at all critical stages of the trial, <u>United States v. Wade</u>, 388 U.S. 218 (1967), including at sentencing. <u>Gardner v. Florida</u>, 430 U.S. 349, 358 (1977) (holding that "sentencing is a critical stage of the criminal proceeding at which [defendant] is entitled to the effective assistance of counsel").

The touchstone for any ineffective assistance of counsel claim is the two-part test laid down by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668(1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Id.</u> at 687. In other words, defendant "must show that counsel's performance was so deficient that it prejudiced his defense." <u>United States v. Ademaj</u>, 170 F.3d 58, 64 (1st Cir.1999) (summarizing <u>Strickland</u> ). As the <u>Strickland</u> Court explained, "[u]nless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." <u>Strickland</u>, 466 U.S. at 687.

<u>United States v. Colon-Torres</u>, 382 F.3d 76, 85 -86 (1st Cir. 2004).  Apropos Curry's challenge to his guilty plea, the Panel expanded:

> In <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985), the Supreme Court applied <u>Strickland</u> 's two-part test to ineffective assistance of counsel claims in the guilty plea context. <u>Id.</u> at 58 ("We hold, therefore, that the two-part <u>Strickland v. Washington</u> test applies to challenges to guilty pleas based on ineffective assistance of counsel."). As the <u>Hill</u> Court explained, "[i]n the context of guilty pleas, the first half of the <u>Strickland v. Washington</u> test is nothing more than a restatement of the standard of attorney competence already set forth in [other cases]. The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." <u>Id.</u> at 58-59.

<u>Id.</u> at 86.

When a "petition for federal habeas relief is presented to the judge who presided at the

petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous

3

proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

***Advice to Plead Guilty, Failure to Investigate Prior to Advising Curry to Plead Guilty and Not Arguing the Advisory Nature of the Sentencing Guidelines vis-à-vis Curry's Career Offender Status***

Ground One of Curry's form 28 U.S.C. § 2255 motion asserts that his attorney rendered ineffective assistance of counsel by advising him to plead guilty.   Curry relates that his attorney advised him to plead guilty because if he did the Government would not pursue the 21 U.S.C. § 851 notice, thereby lowering his sentencing exposure.  (Sec. 2255 Mem. at 2, Civ. No. 09-234, Doc. No. 13.)  He further insists that his attorney never reviewed the evidence with Curry or informed him of the strengths and weaknesses of the prosecution's case.  (Id.)  He explains that the drug quantities involved in the alleged conspiracy were minimal and that had he proceeded to trial the advisory sentence guideline range would have been considerably less, and he would have received the same sentence after the court had applied the career offender mandate.   Curry swears that his attorney never told him that he would be subject to a career offender enhancement if he pled guilty.  (Curry  Aff. ¶ 4, Doc. No. 13-1.)   He also proclaims that his attorney never told him "that the 'career offender' enhancement would be approximately the same sentence as a §851 notice."  (Curry  Aff. ¶ 5.)  "Had Curry been aware that he would be enhanced as a career offender," Curry insists, "he would not have entered the guilty plea and would have insisted on proceeding to trial."  (Sec. 2255 Mem. at 2.)   In other words, Curry is arguing that there would have been no detriment to rolling the dice because he would have ended up with the same sentence were he to proceed to trial.  (Sec. 2255 Mem. at 4, 7.)

Also related to his plea decision, Curry claims in Ground Two that his attorney failed to sufficiently investigate whether the United States had sufficient evidence to overcome the

4

affidavit of Curry's cousin attesting to Curry's innocence. [1] The factual fulcrum  for this

contention is Curry's assertion that his co-defendant and cousin Durrell Curry admitted after a

<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) caution (backed up by an affidavit) that the drugs in

question belonged to Durrell  and that Shaheen was not responsible for the crime.

     In support of its motion for summary dismissal the United States has submitted several

letters from the federal defender who represented Curry.  One letter, dated November 2, 2007,

reads:

> Enclosed please find a complete copy of the discovery I have received
> totaling the cover of the prosecutor of 11/2/07 (2 pages) and 57 pages numbered
> for reference on the lower right corner.  There is also a CD of … some telephone
> calls which I will review with you when I visit.
> The judge has given us until November 20 to file any pre-trial motions.
> Currently the primary motion I am considering is to request that your case be tried
> separately (severed) from your cousin[']s.  Enclosed is the statement your cousin
> gave during the state investigation.
> ….
> Your[]s is a very serious case.  IF the government convicts you[,] be it by
> a plea or trial, you are looking at [a] very long sentence.  With the prior drug
> conviction and the prior attempted murder conviction, you are a "Career
> Offender" under the advisory sentencing guidelines.  This make you[r] base
> offense level a 34 as presently charged (potential maximum sentence is forty
> years), and if the government files a notice under § 851 alleging your prior drug
> conviction, then you face up to a life sentence which moves the Career Offender
> base offense level to 37.  The Criminal History for a Career Offender is always a
> level VI.  IF, you chose to plea and accepted responsibility for your conduct, up to
> 3 points can be deducted.  (The acceptance of responsibility 3 point reduction
> requires a guilty plea, but it DOES NOT require cooperation).  The chart below
> gives you several potential outcomes as a career offender.

| | |
|---|---|
| No § 851 notice, convicted after trial; | 34/VI 262-327 months. |
| No § 851 notice, plea and acceptance; | 31/VI 188-235 months. |
| § 851 notice and convicted after trial; | 37/VI 360-life. |
| § 851 notice, plea and acceptance. | 34/VI 262-327 months. |

---

[1]    Curry also seems to fault his attorney for not reviewing the PSI prior to sentencing to determine if Curry might face a career offender sentence.  (Sec. 2255 Mem. at 2, Civ. No. 09-234, Doc. No. 13.)  As the following record makes crystal clear, counsel was very much on top of Curry's career offender exposure, well before the PSI preparation.

A copy of the Career Offender Guideline and sentencing table are enclosed. Right now your case is on the January, 2008 trial list with jury selection set for January 8. Normally, if we file any motions, the trial date is continued until the motions are ruled on.

Please read the enclosed and I will meet with you next week so we can discuss you[r] options and case strategy.

(Doc. 18-1 at 1-2.)

The defense did file a motion to suppress. After Magistrate Judge Cohen issued his

January 23, 2008, recommended decision on Curry's motion, see United States v. Curry, Crim.

No. 07-100-P-H, 2008 WL 219966 (Jan. 23, 2008) (recommended decision), counsel sent further

correspondence to Curry. After discussing the implications of the recommendation for the

evidence at trial, counsel opined:

The major issue that you need to decide is whether you feel it is in your best interest to continue forward to trial, or whether you think you are better to plead guilty.

At trial the primary issue will be your level of involvement in the transaction. It is certainly true that all the drugs were found on Durrell. At the same time, the testimony so far has Durrell receiving the initial call to set up the "buy," but you are the one who is identified as speaking with the informant/buyer in the other four conversations. The telephone which the informant was calling is found either in your pocket or next to you, and a search of your hotel room reveals a scale, which tests positive for cocaine, and a good sum of money in your toilet kit. We will probably not know until trial itself whether Durrell is called by the government, be it by subpoena or as a cooperator. For planning purposes, I suggest you assume the high probability that ultimately Durrell may testify. There is always the chance that he will continue to testify that you had no involvement, although he has pled guilty, and is seeking acceptance of responsibility which he would lose if he chose to testify that you were not involved, and if the judge felt that it was false testimony.

I have reviewed with you on several occasions the potential application of the career offender laws to you.

(Doc. No. 18-2 at 1-2)(emphasis added). Counsel then sets forth a lengthy paragraph

summarizing his calculations made earlier in his November 2, 2007, letter. He continues:

Therefore, while you are currently looking at a probable career offender sentence starting at a level 34, if we go to trial, and the government realizes they

6

have not yet filed the 851 notice, and they do file that notice, then your offense level goes up to 37. The government must file an 851 notice before the date of any guilty plea, or before the start of trial. Therefore, it is not something they can do later as part of the sentencing process.

        The career offender guideline always uses criminal history category of VI. At a 37/VI, which you would probably be after a trial, because you would have no acceptance reduction, and because I anticipate the government would file the 851 notice, you are looking at a sentence of 360 months to life. On the other hand, if you were to plead guilty now and there was no 851 notice, and you receive the acceptance of responsibility 3 point deduction, you could start at a 34 with 3 points off for acceptance, making you a 31/VI, which carries a range of 188 to 235 months.

        The decision for you is whether you feel you should run the risk of trial, and the potential of a sentence of a low of 360 months, or, if it would be better to plead guilty, seek the acceptance of responsibility credits, and the potential low end sentence of 188 months. Obviously both are very lengthy sentences, but a sentence of 188 months (15.5 years) is certainly a lot different than a 30 year sentence.

        I have told you numerous times that the choice in this decision is up to you. That remains the case. I am fully prepared to try the case, however, you need to weigh the potential risk and benefits. You have shared with me that you have made some bad decisions in the past, and this is a particularly important decision which you should think through. I will discuss it further with you when we meet.

(Id. at 2.)

In a January 25, 2008, letter from counsel to Curry, he informed his client that the plea was set for February 12, 2008, that it would be an "open plea," and that he had discussed the acceptance of responsibility with the prosecutor "who said that in his mind it should still be available" to Curry despite Curry having sent letters to Durrell that could be construed as obstructing justice. (Doc. No. 18-3 at 1.)[2] Following this, counsel sent Curry another letter on

---

[2]      The Revised PSI summarizes the matter of these letters as follows:

        While incarcerated at the Cumberland County Jail, the defendant wrote two letters to codefendant Durrell Curry. Both letters were intercepted before they reached Durrell Curry and were turned over to the police. In the letter dated 11/26/07, the defendant simply asks Durrell Curry to contact various people for him and advises Durrell Curry to "get ready to do a bid." In the letter dated 12/6/07, the defendant advised Durrell Curry that his attorney had filed a motion to suppress and they might call Durrell Curry as a witness in support of that motion. If called as a witness, the defendant asked Durrell Curry if he would take responsibility for the cell phone bearing telephone number 207- 321-1015 (see paragraph 6). The defendant noted that the police

the change of plea hearing, this time attaching the prosecution version and advising Curry that if there is anything in it with which he disagreed he should inform him because of the importance of the acceptance of responsibility reduction.  He cautioned: "We do not want the judge, the prosecutor or probation to have any reason to argue against you getting the 3 level acceptance reduction when we get to sentencing."  (Id. at 2.)

Finally, after Curry's June 9, 2009, sentencing, Counsel sent a summarizing letter to Curry that reads as relevant:

> The judge adopted the revised presentence report which found you to be a Career Offender with a Total Offense Level 31, Criminal History Category VI, with a Guideline Sentencing Range of 188 to 235 months.  The prosecutor stressed your lengthy criminal history.  I argued for a sentence of 188 months, the lowest end of the Career Offender Range.  **Judge Hornby agreed with us and sentenced you to the low end of the advisory range, 188 months incarceration ....**
>
> …
>
> I know 188 months is a long time.  When we began you were facing the prospect of a potential 360 to life sentence if the prosecutor filed the "851 notice".  By pleading he did not file that notice.  Then we were facing the prospect of no acceptance reduction due to the letters to your cousin, but we held on and got the 3 level reduction as well.  You were able to litigate the suppression motion, and you never had to talk and did not cooperate.  We discussed the advisory nature of the Guidelines and Career Offender and we agreed in advance on a strategy of seeking the 188 month low end.  There seemed too much risk in a variance outcome outside the Guidelines as that could have opened you to an upward variance as well as a downward one and there were many bad facts we did not want the judge thinking about at sentencing.  On an "open plea" with no cooperation we were able to cut the exposure from 360 [] to life, down to 188-235, and then to get the low end of that, 188 months.  We discussed the law of appeals and you agreed there is no factual or legal reason to appeal as the sentence was as low as we sought.  …

---

reports didn't describe that cell phone, so the defendant thought that if Durrell Curry claimed it belonged to him, it would weaken the case against the defendant. The defendant also mentioned that, if he was convicted in this case, he faced a very lengthy prison sentence. While the Probation Office believes the defendant's request of Durrell Curry in the 12/6/07 letter could be viewed as an attempt to obstruct justice, the Probation Office takes the position that the defendant's conduct does not rise to the level required to apply a two-level enhancement under §3C1.1. (Rev. PSI ¶ 10.)

(Doc. No. 18-4 at 1-2.)

In his Section 2255 reply memorandum Curry does not contest the authenticity of these letters (or that he received them and had the conferences with counsel alluded to) despite the fact that the content of this correspondence flatly refutes many of the key factual representations about what counsel told him, when, or the extent of counsel's consideration of the factual and legal issues in play in terms of the prospect of trial and the advantages of a plea.   Rather, Curry now seeks an evidentiary hearing based on the fact that the United States has not provided an affidavit by the federal defender and maintains that without this affidavit "various facts regarding his constitutional requirements are simply absent from the record."  (Reply Mem. at 4-5, Civ. No. 09-234-P-H, Doc. No. 24.)

In his reply memorandum, Curry describes how "the crux of Curry's foundational claim" vis-à-vis his first three grounds is his belief that the Durrell Curry affidavit would have defeated the Government's contention under the reasonable doubt standard that Shaheen and Durrell "shared a common goal."  (Reply Mem. at 1-2.)  "Curry's claim," he explains, "is that the affidavit could have gone a long way in proving" that he was only doing a family member a favor by using his phone and giving a ride, "and counsel's duty was to advise Curry of the strengths and weaknesses of the government's case based on this piece of information."  (Id. at 2.)  However, it is clear from the above correspondence that his attorney did make such a measurement and was concerned that Shaheen could not rely on Durrell continuing to stand by the content of this affidavit if Shaheen went to trial. [3]  This was very much part of the calculation

---

[3]        Durrell Curry received a 60-month sentence after his guilty plea.  He was unable to convince the court to apply the safety valve because of his unwillingness to inform the United States of his source.  (Sentencing Tr. at 5, Crim. No. 07-100-P-H,  Doc. No. 91.)  In that proceeding Durrell's attorney explained that "while the Government has the theory that Shaheen is that unknown source, that's not corroborated by the evidence."  (Id. at 7.)

in counsel's advice on sentencing exposure due to the § 851 notice potential and the hoped-for reduction for acceptance of responsibility.

With respect to Curry's vulnerability to the § 851 notice, Curry focuses in his reply memorandum on a theory that nothing in the letters submitted by the United States reflects that counsel actually "asked the government whether they would pursue the § 851 and the career offender together." (Id. at 3.)   He believes that counsel should have met with the prosecution to "get an affirmative answer on whether the policy of the U.S. Attorney's Office is to use both enhancements (i.e. career offender and § 851) or to only use the career offender, which would have allowed Curry to know the sentence was 188-months and take his chances at trial with his supporting evidence that he was not a 'conspirator' as charged." (Id.)   The decision whether or not to file a § 851 notice is discretionary, see United States v. LaBonte, 520 U.S. 751, 762 (1997) (case arising from the District of  Maine); see also United States v. Jenkins, 537 F.3d 1, 3-4 (1st Cir. 2008) (rejecting a prosecutorial vindictiveness claim in a case where the defendant rejected a plea agreement that would have included the non-filing of a § 851 notice, decided to plead to preserve the right to appeal, and the United States filed the § 851 notice prior to the plea) , and here, although the defense was walking a tightrope given the filing of a motion to suppress, the letters sent by Curry to Durrell, and Curry's desire not to cooperate, it is of no small moment that Curry was on the winning side of the exercise of discretion.

The correspondence above reveals that defense counsel was concerned with Curry's vulnerability to the § 851 notice and was very much hoping to avoid triggering the filing thereof, both in the context of the plea and the decision to go to trial.  The strategy was that if Curry pled the United States would exercise its discretion in his favor, which it did.  It also cannot be overlooked that counsel did inquire with the prosecutor about the United States' position on the

10

acceptance of responsibility reduction, a reduction that certainly would have only flowed from the plea.  This dynamic is something that Curry overlooks in suggesting that if he went to trial and no § 851 notice was filed he would have received the same sentence.  What is more, he does not calculate how his decision to proceed to trial might have impacted his sentence in other more subtle ways when the Court made its sentencing range determination post-trial.   On this score, the correspondence makes clear that counsel was attuned to the dangers of the evidentiary development of certain facts when he stated: "There seemed too much risk in a variance outcome outside the Guidelines as that could have opened you to an upward variance as well as a downward one and there were many bad facts we did not want the judge thinking about at sentencing."  Presumably a trial would have been a sounding board for at least some of these "bad facts."

Turning specifically to Curry's third § 2255 claim, in his memorandum in support of his form 28 U.S.C. § 2255 motion, Curry explains that he "seeks only to inform the Court that at the time of his sentencing, the Guidelines were 'advisory.'" (Sec. 2255 Mem. at 8.)  He states that it may have been plausible for his attorney to argue that his criminal history was overstated and that his status as a career offender might have been "waived."  (Id. at 8.)   Curry concedes that, although counsel might have had a viable argument against the application of a career offender status, this would have been a "discretionary consideration" and he cannot argue with certainty that this meets the Strickland standard.  (Id. at 9.)   He is willing to rely on the sound judgment of the Court as to whether counsel should have made this argument.  (Id.)

It is clear from the above that the decision not to seek a variance and focus on achieving a low-end sentence in the career offender range was a sentencing strategy carefully considered by counsel and ironed-out with his client.  Therefore, in my view, Curry cannot meet the Strickland

11

performance showing, as <u>Strickland</u> noted, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." <u>Id.</u> at 690.  With respect to measuring the potential prejudice, the sentencing judge is best placed to make that assessment, <u>McGill</u>, 11 F.3d at 225, but I could discern nothing in the transcript of the sentencing hearing that would lead me to believe that a variant sentence favorable to Curry was in the cards. As it was, it took considerable work on defense counsel's part to successfully persuade the Court to decide on the 188-month absolute low-end of the guideline range sentence despite the prosecutor's argument that Curry's "incorrigible" criminal history warranted "a hefty sentence"(Sentencing Tr. at 6-8).

**B.  Curry's  Request to "Reset"**

Curry makes it clear in his pleadings that he conceives of his fourth ground as not ripe for adjudication and that he has included it in this motion to avoid the rigorous standards applicable to second and successive motions being applied to him.  (Sec. 2288 Mot. at 8-10.)  He wants this single ground tolled.  (Reply Mem. at 5.)

From the attachment to Curry's 28 U.S.C. §  2255 memorandum, it appears Curry envisions challenging a prior, 1998 Massachusetts conviction  for attempted murder on the grounds that there was 'a girl' who was able to testify that she saw the shooting and the person who fired was not Curry.  (Doc. No. 13 at 12.).  The Revised PSI describes this conviction as follows:

> Records from the Massachusetts Department of Corrections (DOC) show that, on 2/21/96, an automobile stopped in front of a residence at 500 Blue Hill Avenue.  The defendant exited the car and started shooting at another individual sitting in another vehicle. The victim attempted to exit out of the passenger side of his vehicle, but another suspect was on that side of the car and started shooting at the victim. Several witnesses identified the defendant as the first shooter, but could not identify the second shooter. DOC records indicate that the defendant

was a confirmed soldier (member) of the Castlegate organization. DOC records show that the defendant received three disciplinary reports while serving this sentence. Those included the following: assaulting an inmate, 10 days in isolation; returning late from a meal, verbal warning; and being in possession of items which he did not own, loss of all privileges for 14 days.

        With respect to this offense, the defendant wanted the Court to know that there were several people involved in this shooting. The defendant admitted that he shot at the victim, but does not believe that any of his shots struck him. The defendant stated that there was "bad blood" between the victim and the defendant's group. He reported that since both sides feared each other, the dispute ended in gunfire.

(Rev. PSI ¶27.)

In his reply memorandum Curry addresses his fourth ground as follows:

        The government opposes Curry's request to toll Ground Four, primarily, because "Massachusetts law authorizes a collateral challenge to a state conviction only if the defendant is still in custody on the conviction."

        While it may be true, Massachusetts, like every other state or Commonwealth must have some remedy that is the functional equivalent of a writ of error coram nobis, which allows a petitioner to seek relief from a judgment that is still causing prejudice. Curry will pursue this avenue in Massachusetts and/or its denial by Massachusetts into a federal court forum to seek relief, if in fact he obtains the necessary evidence to vacate the state judgment.

        If in fact Curry is able to vacate his state judgment, this Court is aware of the ample support for him to be resentenced, absent the career offender stating Curry will not detain the Court with a lengthy argument at this point.

(Sec. 2255 Reply at 5.)

Per Curry's own pleadings (see Doc. No. 13 at 11-12)(letters to his state-court attorney) this state conviction was counseled and does not come within the Gideon v. Wainwright, 372 U.S. 335 (1963) limitation on challenging final state conviction in attacking a federal sentence premised on such convictions. Curry's request to reset is the equivalent of a request for a stay of this proceeding. Certainly under Daniels v. United States, 532 U.S. 374 (2001)[4], he cannot now

---

[4]    Daniels explained:

        If … a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse.

present this court with a direct challenge to the conviction.  He must first seek to have the conviction overturned in the state court, and failing that, through a 28 U.S.C. § 2254 petition after he has exhausted his state remedies.  I do not need to make the determination as to whether or not the Massachusetts courts will entertain Curry's writ of error <u>coram</u> <u>nobis</u> to conclude that it is inappropriate to stay this action while Curry determines if he has the necessary evidence to even launch such a challenge.  His articulation of this claim is too speculative and the prospect of a resolution justifying § 2255 consideration too attenuated.[5]

### Conclusion

For the reasons stated above, I recommend that the Court deny Curry 28 U.S.C. § 2255 relief.  I further recommend that a certificate of appealability should not issue in the event Curry files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

---

The presumption of validity that attached to the prior conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under § 2255. A defendant may challenge a prior conviction as the product of a <u>Gideon</u> violation in a § 2255 motion, but generally only if he raised that claim at his federal sentencing proceeding. <u>Id.</u>

[5]  Even if Curry had had this conviction overturned already, he would have to demonstrate that he undertook to do so diligently. <u>See</u> <u>also</u>  <u>Johnson v. United States,</u>  544 U.S. 295, 30 (2005). Curry was sentenced on June 9, 2008; at this juncture he knew of the collateral consequence of his prior convictions.

14

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

March 30, 2010.

15